UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>Jhon Fernando Delgado Bustamante,<br>also known as, "Jhonny,"<br><br>Defendant. | CRIMINAL NO.:  22-CR-351 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned counsel, respectfully submits this sentencing memorandum in advance of the sentencing of Defendant Jhon Fernando Delgado Bustamante ("Delgado Bustamante" or "Defendant"), which is scheduled for November 20, 2025.

**INTRODUCTION**

The Defendant, who participated in a drug trafficking and money laundering network based in Colombia and Ecuador, pleaded guilty to conspiracy to distribute five kilograms or more of cocaine and conspiracy to launder money. His U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, as calculated by the U.S. Probation Office in the Final Presentence Investigation Report ("PSR") and reflected in the party's plea agreement, is 57 to 71 months' imprisonment based on a total offense level of 25. However, for the reasons set forth below, and consistent with the newly enacted amendments to the Federal Sentencing Guidelines effective November 1, 2025, concerning mitigating role, the Government requests that this Court impose a sentence of 46 months' imprisonment based on a total offense level of 23.

1

I.   **FACTUAL BACKGROUND**

   a. **Offense Conduct**

From approximately March 2020 to August 2021, the Defendant conspired to distribute drugs for unlawful importation into the United States and to launder the proceeds of the sale of drugs. *See* Statement of Facts ("SOF"), ECF No. 23, ¶¶ 1–2. In furtherance of the drug conspiracy, the Defendant delivered six kilograms of cocaine to the buyer's agent in Cali, Colombia. SOF ¶ 7. At the time of the delivery, the Defendant understood that the price per kilogram of cocaine was $1,900, that the buyer would pay for five kilograms at the time of delivery, and that the buyer would pay for the sixth kilogram after its sale in the United States. SOF ¶ 4. In furtherance of the money laundering conspiracy, the Defendant communicated with the buyer's agent to coordinate the payment for the cocaine, and the Defendant received $9,500 as payment for the first five kilograms. SOF ¶ 7. The Defendant and his co-conspirators, knowing the money to be the proceeds of and in furtherance of drug trafficking, sought to conceal the source of the proceeds and avoid detection by using names other than their own when transferring the money from the United States and between each other. SOF ¶ 8.

   b. **Procedural History**

On October 27, 2022, a federal grand jury returned a two-count indictment, charging the Defendant in Count One with conspiracy to distribute five kilograms or more of cocaine, knowing, intending, and having reasonable cause to believe it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B), and 963, and charging the Defendant in Count Two with conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(h), (a)(1)(B)(i), (a)(2)(A), (a)(2)(B)(i), and (a)(3)(B).

The Defendant, a citizen of Colombia, was arrested on May 17, 2023, in Colombia, and extradited to the United States on October 18, 2024. On October 21, 2024, the Defendant made his initial appearance in the District of Columbia and was formally arraigned on November 15, 2024. The Defendant pleaded guilty to the charges in the indictment on July 30, 2025. On November 20, 2025, he will have been in custody for 30 months and 3 days since his arrest in Colombia.

## II.   STATUTORY PENALTIES

The Defendant faces sentencing on two counts. As noted in the parties' plea agreement, Count One carries a maximum sentence of life imprisonment, a mandatory minimum sentence of ten years' imprisonment, a fine up to $10,000,000, or both a term of imprisonment and a fine, and a term of supervised release of at least five years. Plea Agreement, ECF No. 22 ¶ 2. Count Two carries a maximum sentence of twenty (20) years' imprisonment, a fine of not more than $500,000 or twice the value of the property, or both a term of imprisonment and a fine, and a period of supervised release of not more than three years. *Id*. By pleading guilty to Count Two, the Defendant also is liable to the United States for a civil penalty of not more than the greater of the value of the property, funds or monetary instruments involved in the transaction, or $10,000, pursuant to 18 U.S.C. § 1956(b)(1). *Id.*

## III.   SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

The Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 258–60 (2005). However, the Supreme Court held in *Booker* that sentencing courts must consider the Guidelines in formulating an appropriate sentence. *Id.* The Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the

Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* The United States Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.*

On November 12, 2025, the U.S. Probation Office for the District of Columbia ("Probation Office") issued its Final PSR in this case. The Probation Office calculated the Defendant's base offense level at 28 based on the quantity of cocaine involved in the offense conduct (over five kilograms) and the applicability of a two-level "safety valve" reduction pursuant to U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2. PSR ¶ 31. The Probation Office applied a two-level increase pursuant to U.S.S.G. § 2S1.1(b)(2)(B) for a conviction under 18 U.S.C. § 1956, resulting in an Adjusted Offense Level of 30. PSR ¶ 32. The Probation Office noted the timely guilty plea and the Defendant's acceptance of responsibility and applied a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) and (b), bringing the total offense level to 27. PSR ¶¶ 38–39. The Probation Office then applied an additional two-point reduction pursuant to U.S.S.G. § 4C1.1 ("Adjustment for Certain Zero-Point Offenders"). PSR ¶ 40. With this additional reduction, the total offense level became 25. PSR ¶ 41. The resulting Guidelines range, calculated with a total offense level of 25 and a criminal history category of I, is 57 to 71 months' imprisonment. PSR ¶ 77.

Since the Probation Office drafted its initial PSR and solicited the parties' positions to finalize the PSR, however, the Sentencing Commission amended the Federal Sentencing Guidelines effective November 1, 2025, pertaining to the application of U.S.S.G. § 3B1.2's mitigating-role adjustment in drug cases. *See* U.S.S.G. § 2D1.1(e)(2)(B). The amendment clarifies and specifies that a mitigating role adjustment is generally warranted if the "defendant's primary function in the offense was performing a low-level trafficking function." U.S.S.G. §

4

2D1.1(e)(2)(B).  A low-level trafficking function can include conduct such as serving as "courier, running errands, sending or receiving phone calls or messages, or acting as a lookout," or another low-level trafficking function, such as "distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit" such as a "familial relationship."  U.S.S.G. § 2D1.1(e)(2)(B)(i)–(ii).  The Guidelines note that "[t]he extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  U.S.S.G. § 2D1.1(e)(2)(B).  Here, in light of these new instructions and given the totality of the circumstances, the Government acknowledges that the Court should apply a two-level reduction pursuant to U.S.S.G. §§ 2D1.1(e) and 3B1.2 because the Defendant was a minor participant in the offense when he served as the conduit between the source of supply, the broker, and the buyer of cocaine, responsible for delivering six kilograms of cocaine and receiving the payment for that delivery in return.

With this additional two-level reduction, the Defendant's total offense level is 23, for a Guidelines range of 46 to 57 months' imprisonment.  For the reasons outlined below, the Court should impose a sentence of 46 months' imprisonment.

### IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

After calculating the applicable Guidelines range, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented."  *Gall*, 552 U.S. at 49–50 (citation and footnote omitted).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

5

        (A)        to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)        to afford adequate deterrence to criminal conduct;

        (C)        to protect the public from further crimes of the Defendant; and

        (D)        to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

    A.    **Nature and Circumstances of the Offense**

The Defendant's conviction arises out of his participation in a partnership based in Colombia and Ecuador to send cocaine to the United States and repatriate the proceeds to Colombia and Ecuador. *See generally* SOF. The Defendant acted as a conduit between the source of the cocaine in Colombia, the broker in Ecuador, and the buyer's representative, resulting in the Defendant ultimately delivery six kilograms of cocaine in Cali, Colombia. SOF ¶¶ 1–7. The

6

Defendant also coordinated the receipt of the partial proceeds for the drug transaction. SOF ¶¶ 7–8.

The Defendant was seemingly motivated to participate in this crime, both for profit and ███████████████████████████████████████████████████████. Though he did not hold a leadership position in the group and he acted largely at the direction of others with respect to the single transaction that resulted in the charges in this case, the Defendant's role in the venture was integral to the success of the conspiracies. As a go-between, the Defendant held a lower-level, but non-trivial, place in criminal conduct that sustains the ecosystem of the global cocaine supply chain from Colombia. The amount of cocaine delivered by the Defendant and his co-conspirators, six kilograms, though not as large of a quantity as other shipments distributed for importation into the United States from Colombia, was nonetheless consequential, and would have had a detrimental effect on each country that it touched, from its origin point to the transit countries and the ultimate destination, the United States. The seriousness of this offense supports a sentence of 46 months' incarceration.

B.    **The History and Characteristics of the Defendant**

The Defendant's history and characteristics warrant the Government's recommended sentence, too. The Defendant is ██ years old and is a citizen of Colombia. He has no known prior criminal history. PSR ¶ 44. ████████████████████████████████████████████ ████████████████████████████████████████ The Defendant reports a stable upbringing where his physical and emotional needs were met. PSR ¶¶ 49–55. The Defendant completed his high school in Colombia and obtained a nursing degree from *Instituto Nacional de Educaccion y Capacitacion (INEC)* in Colombia. PSR ¶ 64. He received specialized training as an intensive care nurse in Colombia. PSR ¶ 65. At the time of his arrest in 2021, the

7

Defendant was a nurse in Colombia and had been employed as a nurse in different facilities since 2016. PSR ¶ 65–69a. The Defendant worked as a security guard prior to becoming a nurse. PSR ¶ 69. Since his incarceration in DC Jail, he successfully completed courses on solar panels, second chances, and plumbing. PSR ¶ 68. Notably, absent from the Defendant's record is the use of violence, and the Defendant's work as a nurse evinces a capacity to help rather than hurt. The Government acknowledges that the Defendant accepted responsibility by pleading guilty in this case. However, the Defendant's history and characteristics also establish that he, having lawful alternatives to earn a living, deliberately chose to engage in criminal conduct for, at least in part, his own financial benefit.

      **C.**    **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The Court should impose a sentence sufficient to "reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Although the Defendant's criminal activity is not comparable to violent drug cartels that traffic tonnage quantities of illicit drugs to the United States on a consistent basis, his offense is still sufficiently serious as to warrant the recommended sentence. As described above, the Defendant's conviction arises out of his participation in international drug trafficking and money laundering conspiracies, and his participation was neither casual nor incidental, even though he served a lower-level role: he discussed the sale of cocaine from Colombia to the United States with his co-conspirators, and he agreed to receive six kilograms of cocaine from the source and deliver it to the buyer. He also participated in the repatriation of the proceeds from the sale of five kilograms of that cocaine and took steps to conceal the source and ownership of the proceeds. It is participants such as the Defendant, who are positioned at or near the origin of the global drug supply chain, who perpetuate this illicit trade. Therefore, the Defendant should receive a sentence

8

sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The Government's recommended sentence does just that.

        **D.**       **The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by the Defendant. 18 U.S.C. § 3553(a)(2)(B)–(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The Defendant in this case received cocaine from the source of supply and personally delivered it to the buyer knowing it was destined for the U.S. market. He also participated in the receipt of the proceeds from the sale of the cocaine. The international drug trade has many components—growers, producers, couriers, suppliers, brokers, and dealers, to name a few. To profit from this illicit trade, drug traffickers must move the illicit drug—in this case cocaine—from the country in which it is produced to other parts of the world where demand is high. The proceeds of the drugs must also be moved from the buyer to the seller. The Defendant participated in both the movement of drugs to the market and the receipt of payment.

Given drug trafficking's adverse societal and community impacts, it is important that the Court impose a sentence that will deter others from engaging in this activity and undermining the rule of law. Drug trafficking organizations have adapted and continue to be prolific. An appropriate sentence in this case will send a clear message to other similarly situated participants in the drug trafficking world that regardless of role, punishment is certain. While this prosecution disrupted some fraction of cocaine trafficking from Colombia to the United States, continued cocaine trafficking still occurs. The drug trafficking world is highly interconnected, and it is

9

imperative to send the message to other participants and would-be participants that taking steps to traffic drugs to the United States poses serious consequences—that is, substantial periods of incarceration.

### Specific Deterrence

The Defendant's actions demonstrate the need for specific deterrence and weigh in favor of a sentence of 46 months' incarceration, which is at the low end of the Guidelines range as calculated by the Government. The Defendant's criminal conduct—such as the hand-to-hand delivery of cocaine to a buyer in Colombia as well as the receipt of the proceeds—demonstrates his personal investment in, and the steps he was willing to take to achieve, the ultimate objective of the conspiracies: selling cocaine in the United States for profit and repatriating the proceeds. While the Government acknowledges that the Defendant accepted responsibility by pleading guilty in this case, a significant sentence is necessary to deter the Defendant from re-offending upon his release, should he again find himself considering engaging in unlawful conduct to make money or to help a family member, friend, or anyone else.

E. **Unwarranted Sentencing Disparities**

Finally, 18 U.S.C. § 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." When determining whether a sentence creates an unwarranted disparity, the Court should also consider, *inter alia*, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from

defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

Title 18 U.S.C § 3553(a) does not require that the sentencing judge engage in a case-by-case comparison. This sentencing provision is aimed at national disparities; and courts have held that "the guidelines themselves are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *United States v. Saez*, 444 F.3d 15, 18–19 (1st Cir. 2006); *see also United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006); *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir. 1997); *United States v. Hall*, 977 F.2d 861, 863–64, n.4 (4th Cir. 1992); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991); *United States v. Joyner*, 924 F.2d 454, 460–61 (2d Cir. 1991).

In this case, the Defendant is the only person who has been extradited and convicted for the charged conspiracies, so there are no co-defendant comparators. The best comparators, therefore, are similarly situated defendants in other cases who have been sentenced. According to the United States Sentencing Commission's Judiciary Sentencing Information ("JSIN") database, in the last five years, individuals like the Defendant who did not receive a downward departure for substantial assistance, who were convicted of an offense covered by U.S.S.G. § 2D1.1 for powder cocaine, and who had a total offense level of 23 with a Criminal History Category of I, on average received sentences of 33 months' imprisonment. The median length of imprisonment imposed was 36 months.[1]   JSIN, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Nov. 17, 2025). Of these individuals, 28 percent received a within-Guidelines sentence. Thus, it would not

---

[1] The JSIN does not differentiate between defendants who received sentences below the Guidelines range to account for their eligibility, as a deportable alien, for a departure pursuant to *United States v. Smith,* F.3d 649, (D.C. Cir. 1994), and defendants who did not receive a *Smith* departure.

11

create an unwarranted sentencing disparity to sentence the Defendant to the Government's recommended within-Guidelines sentence of 46 months' imprisonment.

## CONCLUSION

For the reasons set forth above, the Government recommends the Court sentence the Defendant to a term of imprisonment of 46 months, five years of supervised release, and the mandatory $100 special assessment.

Respectfully Submitted,

Dated: November 19, 2025

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice

By: */s/ Janet H. Turnbull*
Janet H. Turnbull
Trial Attorney
Money Laundering, Narcotics and Forfeiture Section
Criminal Division
U.S. Department of Justice
Telephone: 202-616-2576
Email: janet.turnbull2@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the Government's Sentencing Memorandum was sent via ECF to counsel of record for the Defendant, this 19 day of November, 2025.

                  By:    */s/ Janet H. Turnbull*
                            Janet H. Turnbull
                            Trial Attorney
                            Criminal Division
                            United States Department of Justice
                            Money Laundering, Narcotics and Forfeiture Section